20 P.3d 689

**Robert R. COMBES, Claimant–Appellant–Cross–Respondent,**

v.

**STATE of Idaho, INDUSTRIAL SPECIAL INDEMNITY FUND, Defendant–Respondent–Cross–Appellant.**

No. 25407.

Supreme Court of Idaho, Boise, November 2000 Term.

Dec. 29, 2000.

Rehearing Denied April 3, 2001.

**506**

Cantrill, Skinner, Sullivan & King, Boise; John F. Greenfield, Boise, for appellant. Gardner W. Skinner and John F. Burton, Jr. argued.

Hon. Alan G. Lance, Attorney General; Mallea & Scrivner, Boise, for respondent. Kenneth L. Mallea argued.

KIDWELL, Justice.

Robert Combes, claimant, appeals the Industrial Commission's determination that he was not entitled to permanent and total disability benefits because he did not establish that his pre-existing condition or occupational disease was aggravated by an "accident." On appeal, Combes argues that the Court should overrule three Idaho cases, thus disavowing the "accident" requirement currently established in Idaho worker's compensation law.

## I.

### FACTS AND PROCEDURAL HISTORY

Claimant Robert Combes (Combes) began work with the employer in this case, Yanke Machine Shop, Inc. (Yanke), in February of 1979. He continued employment with Yanke until November of 1992. Combes performed a variety of services for Yanke including operating heavy machinery, driving truck, and working on ranches owned by the Yanke Corporation. Combes' claim stems from allergy/respiratory problems that he suffered during the course of his employment.

Combes suffered from allergies as a teenager while he worked on the family farm. However, he experienced relatively few allergy-related problems in his adulthood, until the problems which are the basis for this claim arose. Combes first worked at one of the Yanke ranches in the early or mid-1980's and did not experience any allergy or breathing problems at that time. In the fall of 1986, Combes was working on an extremely dusty ranch project clearing sage brush and leveling low spots. On that job, he began utilizing a dust mask and Primatine mist to help combat breathing difficulties.

Combes sought medical attention for the breathing difficulties that he suffered in the fall of 1986. In December of 1986, Dr. Ganier, Combes' treating physician, determined that Combes' condition had improved from the symptoms he suffered in the fall, but still prescribed medication to relax the smooth muscles and an inhaler.

At various times ranging from 1988 to 1992, Combes worked at the Yanke ranch properties. Combes noticed problems with breathing and continued to use dust masks and/or inhalers as a result of the problems.

Combes returned to Dr. Ganier on February 28, 1992, and reported that he was feeling better, as he had not been at the ranch for approximately one month. However, following this visit, Combes experienced increased respiratory problems, in spite of the use of dust masks, the prescribed medication and over-the-counter Primatine mist.

In the fall of 1992, Combes respiratory symptoms increased in severity. From November 9 until the day before Thanksgiving 1992, Combes worked continuously at the "Nashua project," a site that was extremely dusty, utilizing inhalers approximately every thirty minutes. Combes experienced severe breathing problems on the day before Thanksgiving and on Thanksgiving day while working on other Yanke job assignments. He sought medical attention shortly thereafter and was diagnosed as suffering from status asthmaticus. He was hospitalized from November 29, 1992, until December 5, 1992. Following his hospitalization, Combes' condition did improve somewhat, however, he continues to take up to seven different types of medication per day to control his asthma. Combes filed a worker's compensation complaint against the Yanke Machine Shop on June 9, 1993. Combes filed a complaint against the ISIF on January 26, 1994.

A hearing was held before the Industrial Commission on October 18–19, 1994. Dr. Ganier testified that he believed Combes had experienced asthma since he was a child and

that Combes' asthma was permanently aggravated by exposures to various particulants during the three-to six-month time prior to his November 1992 hospitalization. Dr. Ganier believed that the aggravation was permanent and that Combes suffered from a Class III impairment that constituted 26–50% of the whole person. Dr. Ganier thought that Combes had been reasonably compliant with his medications and did not anticipate any improvement in Combes' condition in the foreseeable future. Dr. Ganier felt that Combes was not able to return to his former occupation, nor was he capable of employment in any endeavor, due to a lack of stamina and possible exacerbation of his respiratory problems.

Dr. Emil Bardana, a pulmonary specialist, testified that he did not believe that Combes suffered from occupational asthma, nor did he believe that Combes' pre-existing asthma was aggravated by an occupational component. Dr. Bardana felt that Combes was not compliant with his medication regime and that if Combes had complied, his pulmonary function tests would be at or near normal levels and Combes would be capable of returning to employment, with some modifications. According to Dr. Bardana, Combes had no permanent physical impairment prior to May 1991 based upon Dr. Ganier's 1986 pulmonary function studies. Dr. Bardana testified that if Combes treated his allergies, his asthma would vastly improve.

Following the hearing, Combes, Yanke, and Argonaut (Yanke's insurance carrier), entered into a lump-sum agreement, which was approved by the Commission. The case continued on between Combes and the ISIF. In an order filed on June 4, 1996, the Commission issued its Findings of Fact and Conclusions of Law. The Commission found Dr. Ganier's testimony to be persuasive and that Combes had a permanent physical impairment rating of 45% of the whole man. The Commission concluded that Combes could not return to work as a heavy equipment operator and could not return to work at the Yanke ranches due to exposure to irritants which could cause an increase in the asthmatic condition. Further, Combes suffered a pre-existing permanent impairment as of

February 1992, and this pre-existing impairment was aggravated or accelerated by the continued and last injurious exposure to allergens for the three to six months prior to November of 1992.

The Commission next discussed whether Combes could recover under the applicable worker's compensation laws. This, the Commission noted, depended on whether Combes had established that he suffered an aggravation resulting from an industrial accident. The Commission determined that Combes' exposure to dust, grasses, mold, animal danders, and pollens, in the three to six months prior to November of 1992, constituted an accident. Additionally, the Commission found Combes to be totally and permanently disabled under the odd-lot doctrine beginning the date he was discharged from the hospital on December 5, 1992.

The ISIF appealed the Commission's order to the Supreme Court on July 10, 1996. On July 21, 1997, this Court reversed the order of the Industrial Commission and remanded the case in *Combes v. State, Industrial Special Indemnity Fund,* 130 Idaho 430, 942 P.2d 554 (1997). This Court found that the Industrial Commission erred in its conclusion that Combes had suffered an industrial accident.

The Commission made the following "Order on Remand" on November 19, 1997: 1) Claimant did not suffer an "accident" as that term is defined under Idaho worker's compensation law; 2) Claimant is not entitled to worker's compensation benefits under an accident theory.

On September 23, 1997, claimant filed a "Request for Calendaring" with the Commission in order to determine whether or not the claimant was still totally and permanently disabled and whether the claimant was entitled to worker's compensation benefits under the occupational disease provisions of the Idaho worker's compensation law. The ISIF filed an objection to Combes' request for calendaring, arguing that Combes' was no longer entitled to argue the occupational disease theory.

In an order dated November 10, 1998, the Commission concluded that the issue of occu-

pational disease had not been finally adjudicated. After denying defendant's objection to claimant's motion to calendar a hearing, the Commission noted, "The only issue, therefore, that is presently before the Commission is whether Claimant suffered a compensable occupational disease under the Idaho Workmen's Compensation Law."

Following this ruling, the defendant argued that Combes did not suffer from an occupational disease, as testimony from both physicians at the hearing established that Combes suffered from asthma since childhood. According to the ISIF, Combes would have experienced the same asthma-related problems in his day-to-day life regardless of whether or not he was employed by Yanke. Additionally, Combes was not entitled to recovery as a matter of law, as "occupational diseases" are treated the same as other pre-existing conditions. Consequently, the "accident" requirement once again must be satisfied before Combes can recover. Finally, the defendant argued that Combes did not satisfy the notice requirements outlined by the statute.

Combes argued that his condition met the definition of occupational disease found within the worker's compensation laws. Additionally, Combes cited to Bowman v. Twin Falls Construction Company, Inc., 99 Idaho 312, 581 P.2d 770 (1978), a case which has subsequently been overruled, in support of his position. Combes argued that the notice requirements had been met, as the employer had actual notice of Combes' condition and was not prejudiced by a lack of formal written notice.

On January 29, 1999, the Commission issued its order regarding the occupational disease. The Commission found that Combes had satisfied the notice requirements. Further, even if Combes could establish that he suffered from an occupational disease, he was not entitled to recover due to the fact that he had still not proven that the aggravation resulted from an "accident." Combes filed a timely appeal to the Idaho Supreme Court, arguing that he was entitled to recover under the occupational disease provisions of the worker's compensation laws; the ISIF cross-appealed, arguing that the Commission incorrectly determined that the claimant met the notice requirements found in the worker's compensation statutes.

## II.

## STANDARD OF REVIEW

The Industrial Commission's conclusions of law are freely reviewable by this Court. *Taylor v. Soran Restaurant, Inc.*, 131 Idaho 525, 527, 960 P.2d 1254, 1256 (1998). Factual findings will be upheld if supported by substantial, competent evidence. *Id.* Constitutional issues and construction and application of legislative acts are questions of law subject to free review by this Court. *Struhs v. Protection Tech., Inc.*, 133 Idaho 715, 722, 992 P.2d 164, 171 (1999).

## III.

## ANALYSIS

The law in Idaho provides that an employee who suffers from a pre-existing condition must establish that his or her disease was aggravated by an accident before they are entitled to recover. *Nelson v. Ponsness–Warren Idgas Enter.*, 126 Idaho 129, 879 P.2d 592 (1994); *Demain v. Bruce McLaughlin Logging*, 132 Idaho 782, 784–85, 979 P.2d 655, 657–58 (1999). Likewise, one who suffers from an aggravation of an occupational disease must also establish that an accident caused the aggravation. *Reyes v. Kit Mfg. Co.*, 131 Idaho 239, 241, 953 P.2d 989, 991 (1998). "Nothing in these statutes indicates that an employer who employs an employee who comes to the employment with a pre-existing occupational disease will be liable for compensation if the employee is disabled by the occupational disease due to an injurious exposure in the new employment." *Id.*

Combes argues that key Idaho cases that support these rules of law should be overruled for various reasons, including the fact that they do not promote the legislative intent behind the worker's compensation laws. We decline Combes' invitation to overrule *Nelson, Reyes,* and *Demain.* It is the duty of the legislature to remedy law that

does not conform to legislative intent. The absence of legislative involvement in the six years since *Nelson* was decided indicates that the legislature thus far does not disagree with this Court's interpretation of Idaho worker's compensation law.

Whether Combes suffered from an occupational disease was indirectly addressed by the Industrial Commission in its order dated January 29, 1999. In this order, the Commission noted, "Assuming Claimant is able to prove an occupational disease, it is not compensable under *Nelson* and its progeny." While we agree with the brief comments made by the Commission, a complete analysis of whether Combes suffered from an occupational disease can not be reached because of the previously established "law of the case."

 "The rule is well established and long adhered to in this state that where, upon an appeal, the Supreme Court, in deciding a case presented states in its opinion a principle or rule of law necessary to the decision, such pronouncement becomes the law of the case, and must be adhered to throughout its subsequent progress, both in the trial court and upon subsequent appeal ...." *In re Barker v. Fischbach & Moore, Inc.*, 110 Idaho 871, 872, 719 P.2d 1131, 1132 (1986)(citing *Suitts v. First Security Bank of Idaho*, 110 Idaho 15, 713 P.2d 1374 (1985)).

In *Combes I*, this Court addressed Combes' argument that he was entitled to recover based on an occupational disease theory. *Combes*, 130 Idaho at 433, 942 P.2d at 557. The Court declined to determine whether Combes could recover under the occupational disease theory, finding that he raised this issue for the first time on appeal. *Id.* We are now obliged to follow the "law of the case" in *Combes I*. Combes failed to raise the occupational disease theory in a timely manner and therefore, this issue will not be decided.

## IV.

### CONCLUSION

Substantial and competent evidence supports the Industrial Commission's conclusion that Combes is not entitled to recover under the worker's compensation laws of Idaho. Under the previously established law of the case, the issue of whether Combes suffered from an occupational disease was not raised in a timely manner, and thus will not be examined by this Court. The order of the Industrial Commission is affirmed. Costs are awarded to respondent.

Chief Justice TROUT, Justices SILAK, SCHROEDER and WALTERS concur.