# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 41469

NEWMAN K. GILES, )
)
    Claimant-Appellant, )
)     **Boise, September 2014 Term**
v. )
)     **2014 Opinion No. 122**
EAGLE FARMS, INC., Employer; )
)     **Filed: November 28, 2014**
and )
)     **Stephen W. Kenyon, Clerk**
IDAHO STATE INSURANCE FUND, Surety, )
)
    Defendants-Respondents. )
)

Appeal from the Idaho Industrial Commission.

The decision of the Industrial Commission is <u>affirmed</u>.

Smith, Driscoll & Associates, PLLC, Idaho Falls, for Appellant. Bryan D. Smith argued.

Augustine Law Offices, PLLC, Boise, for Respondents. Paul J. Augustine argued.

_____

J. JONES, Justice

    Newman K. Giles (Kal) sought income benefits from his employer for injuries he suffered during the course of his employment. Kal was involved in a one-vehicle accident, sustaining severe injuries. Finding Kal's intoxication to have been a reasonable and substantial cause of his accident and resulting injuries, the Idaho Industrial Commission held Kal was barred from receiving income benefits. Kal appealed.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

    The claimant, Kal Giles, was involved in a one-vehicle accident during the course of his employment.[1] While returning from repairing a sprinkler pivot at approximately 3:30 a.m., Kal

_____

[1] The referee did not make a finding on the question of whether the injury was sustained in the course of Kal's employment. However, the evidence shows that Kal was returning from a job assigned by his employer and that employees are always paid for their time in returning from those jobs since the assignments are often in remote

1

was ejected from his vehicle and suffered severe injuries. The evidence is undisputed that Kal was driving at approximately 123 mph in a 50 mph zone at the time of the accident, that he was legally intoxicated with a blood alcohol concentration (BAC) of .11%, that he was very familiar with the road and the particular curve where the accident happened, and that he was not wearing a seatbelt. Kal also claims to have been texting in the time leading up to the accident, though evidence of the alleged texting was not raised until opening argument at the evidentiary hearing nearly four years after the accident. The Idaho Industrial Commission conducted the hearing on the sole issue of whether Kal was barred from receiving income benefits by Idaho Code section 72-208, which denies benefits "[i]f intoxication is a reasonable and substantial cause of an injury." I.C. § 72-208(2).

At the evidentiary hearing, Kal sought to establish that the accident primarily resulted from his speed, stressing his propensity for driving at excessive speeds. He testified that he drives a "souped-up" truck and essentially has a "need for speed." There was generally a consensus among the witnesses that the 123 mph Kal was driving was a substantial factor in causing his accident and resulting injuries.

Acknowledging that the effects vary from person to person based on a variety of factors, the crash-investigating officer and two expert witnesses each testified as to the general impairing effects of alcohol, including impairment of judgment, motor skills, inhibitions, alertness, reaction time, depth perception, and multi-tasking. There was also more specific testimony with respect to intoxication. Trooper Bivens, the investigating officer, testified that alcohol at the concentration Kal had in his blood at the time of the accident noticeably impairs an individual's judgment and motor skills and that alcohol was a contributing factor to Kal's accident.

The surety, the State Insurance Fund (SIF), retained Dr. Dawson, a pharmacology Ph.D. to try, as he put it, "to determine if, and to what degree, alcohol may have played a role in Kal's crash." His testimony was given upon his understanding that there could be more than one "substantial cause" of the accident. Dawson ultimately opined to a reasonable degree of probability in his field and based upon his education and research on the effects of alcohol and drugs on cognitive and psychomotor functioning, as well as the documentation contained in this case, that "intoxication was a reasonable and substantial cause of the crash and subsequent

---

locations. Because Employer does not contest the fact that the injuries were sustained in the course of employment, we do not analyze that issue here.

injury."

Kal retained Dr. Anderson, an emergency room physician, to determine whether alcohol was a substantial cause, which Dr. Anderson understood to mean "the number one cause, . . . the main cause, . . . [the] reproducible cause." In analyzing the cause of Kal's accident, Dr. Anderson took what he called a "reproducible evidence based" approach. This means he looked at each possible causal factor individually and tried to determine which of them would *always* result in an accident. Using this method, he determined there were certain people who would sometimes be able to negotiate the stretch of road relevant in this case even with a BAC of .11; he determined there were certain people who would sometimes be able to negotiate that road while texting; he then concluded that, because no person could ever negotiate that stretch of road while driving 123 mph, Kal's speed was the only "reproducible cause" and was therefore the only "reasonable and substantial" cause.

Dr. Dawson's opinions regarding the reasonable and substantial causes of Kal's accident and injuries were more persuasive to the referee than Dr. Anderson's. The referee found intoxication was a reasonable and substantial cause of the accident and injuries and concluded that Kal was barred from receiving income benefits under Idaho Code section 72-208. The Commission adopted the referee's findings as its own. Kal appealed and we affirm.

## II.
## ISSUES CONSIDERED ON APPEAL

1. Whether there is substantial and competent evidence to support the Commission's finding that intoxication was a reasonable and substantial cause of Kal's injuries.

2. Whether the Commission reversibly erred in considering Kal's use of prescription medication to find that intoxication was a reasonable and substantial cause of Kal's injuries.

3. Whether the Commission reversibly erred in failing to consider evidence of Kal's alleged texting in the time leading up to his accident.

4. Whether the Commission reversibly erred in refusing to find that Kal's failure to wear a seatbelt was a reasonable and substantial cause of his injuries.

5. Whether either party is entitled to attorney fees in this case.

## III.
## STANDARD OF REVIEW

The Court in *Watson v. Joslin Millwork, Inc.* stated the relevant standard when this Court reviews a decision of the Idaho Industrial Commission:

On appeal from the Industrial Commission, this Court exercises free review of the Commission's legal conclusions, but will not disturb findings of fact if they are supported by substantial and competent evidence. Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion. The conclusions reached by the Industrial Commission regarding the credibility and weight of evidence will not be disturbed unless the conclusions are clearly erroneous. We will not re-weigh the evidence or consider whether we would have drawn a different conclusion from the evidence presented.

149 Idaho 850, 854, 243 P.3d 666, 670 (2010) (citations omitted).

## IV.
## ANALYSIS

Generally speaking, the purpose of the Idaho workers' compensation law is to provide compensation to workers for injuries sustained in the course of their employment. *See* I.C. § 72-201; *Bint v. Creative Forest Prods.*, 108 Idaho 116, 120, 697 P.2d 818, 822 (1985). However, with certain exceptions not relevant here, "[i]f intoxication is a reasonable and substantial cause of an injury, no income benefits shall be paid." I.C. § 72-208(2). "Reasonable and substantial cause" is not specifically defined in the statutes, nor is there Idaho case law interpreting this phrase in the context of Idaho Code section 72-208(2). However, where there are several possible causes of an injury in the tort arena, we have employed the "substantial factor" test. An Idaho pattern jury instruction defines the substantial factor test of proximate cause as "a cause that, in natural or probable sequence, produced the injury, the loss or the damage complained of. It need not be the only cause. It is sufficient if it is a substantial factor in bringing about the injury, loss or damage." IDJI 2.30.2. We find it appropriate to apply the substantial factor test here, together with a consideration of the reasonableness of any conclusion as to causation.

The parties in this case raise four possible factors that separately or in conjunction caused Kal's accident and resulting injuries: Kal's intoxication, Kal's speed, Kal's texting while driving, and Kal's failure to wear a seatbelt. Therefore, this Court must determine whether there is substantial and competent evidence to support the Commission's finding that intoxication was a reasonable and substantial cause of Kal's accident and injuries.

A. **There is substantial and competent evidence to support the Commission's finding that intoxication was a reasonable and substantial cause of Kal's accident and resulting injuries.**

Kal argues the Commission's finding that intoxication was a reasonable and substantial cause of his accident and resulting injuries was not supported by substantial and competent

4

evidence. Kal asserts: (1) that his .11 BAC, alone, does not prove intoxication was a substantial cause of his injuries; (2) that the Commission arrived at its conclusion simply by eliminating other possible causes rather than by affirmative evidence of intoxication-causation; and (3) that there is not substantial and competent evidence in the record to support the Commission's finding that Kal's intoxication caused him to have an unusually reckless state of mind the night of his accident.

Kal argues that a blood alcohol reading is not sufficient evidence to support a denial of income benefits under Idaho Code section 72-208, citing *Hatley v. Lewiston Grain Growers, Inc.*, 97 Idaho 719, 552 P.2d 482 (1976).[2] Although the facts of *Hatley* are similar to those in this case, the applicable legal standard with respect to proof of causation in that case came from a prior version of the statute and that stricter standard does not apply in this case.

In *Hatley*, the claimant, a truck driver, was killed in a motor vehicle accident. *Id.* at 720, 552 P.2d at 483. He had a BAC of .117, and crash scene investigators found a partially empty bottle of whiskey in the vehicle. *Id.* The investigating officer testified that Hatley had taken a curve too fast and that his ability to control the vehicle was impaired by his intoxication. *Id.* at 721, 552 P.2d at 484. Additionally, a toxicologist testified to the general effects of alcohol on a person—that it impairs reflexes, depth perception, and overall ability to operate a vehicle. *Id.* The Commission concluded the employer had not met its burden of proving the requisite causal connection between the intoxication and the accident and resulting injuries. *Id.* at 720, 552 P.2d at 483.

*Hatley* is distinguishable from the case at hand for three important reasons: (1) in *Hatley*, the employer had to present substantial evidence to overcome a statutory presumption that such an injury was not "occasioned by" intoxication; (2) the causation standard contained in the version of Idaho Code section 72-208 in effect at the time was a stricter standard than that in the present version; and (3) in *Hatley*, the Court affirmed facts found by the Commission, while here Kal asks the Court to overturn the Commission's factual findings.

Because the claimant in *Hatley* died, the Court applied a presumption in Idaho Code section 72-228 that where "the injury arose in the course of employment, it shall be presumed, in

---

[2] Kal also places substantial weight upon a Louisiana Court of Appeals case, *Folse v. Am. Well Control*, 536 So.2d 686 (La. Ct. App. 1988). However, Louisiana precedent has no application in Idaho and we do not find the case to be helpful in analyzing Idaho statutes.

the absence of substantial evidence to the contrary, . . . that the injury or death was not occasioned by the employee's intoxication." *Id.* at 722, 552 P.2d at 485. A 1997 amendment to that section eliminated this presumption and made the section inapplicable to any defense under Idaho Code section 72-208. 1997 Idaho Sess. Laws, ch. 274, § 3, p. 804; I.C. § 72-228(2). The Court in *Hatley* noted that the nature of the witnesses' testimonies was "couched in generalities" with respect to the effects of intoxication and that the .117 BAC was "not sufficiently high to overcome the statutory presumption against causation." We therefore upheld the Commission's finding that the claimant's death was not caused by intoxication. *Id.* at 722–23, 552 P.2d at 485–86. Throughout the Court's analysis, it stressed that its reasoning relied on the presence of the statutory presumption—"[i]n light of the presumption imposed by I.C. § 72-228 . . . ," "particularly in view of the presumption contained in the statute," and "not sufficiently high to overcome the statutory presumption." *Id.* at 722, 552 P.2d at 485. The presumption has no application here.

When *Hatley* was decided, Idaho Code section 72-208(2) provided that "[i]f an injury *is the proximate result of* an employee's intoxication, . . ." the income benefits will be reduced. *Id.* at 721 n.1, 552 P.2d at 484 n.1 (emphasis added); 1997 Idaho Sess. Laws, ch. 274, § 2, p. 804. This prior requirement—that intoxication be the proximate cause of the injuries—is a very significant distinction. Based thereon, the *Hatley* Court held that the "Commission did not err in its conclusion that there was a lack of substantial evidence in the record that Hatley's death *was caused by* intoxication." *Id.* at 723, 552 P.2d at 486 (emphasis added). Under the current language of the statute, intoxication must now be "**a** reasonable and substantial cause," rather than the proximate cause. The use of the word "a" shows that intoxication can be one among a number of substantial causes, and there is no requirement to show which causative factor is the most substantial.

A further problem with Kal's reliance on *Hatley* is that determination of a reasonable and substantial cause of an injury is a factual determination, which is within the purview of the Commission. In *Hatley*, the Commission found that the decedent's injuries were not the proximate result of intoxication. The Court declined to disturb that factual finding. Here, on the other hand, Kal asks the Court to second-guess the Commission's factual finding that intoxication was a reasonable and substantial cause of his accident and injuries. We will decline to do so where substantial and competent evidence supports the Commission's factual finding.

6

Kal argues that in finding intoxication was a substantial cause of the accident and resulting injuries, the Commission relied on "negative evidence" by ruling out other possible causes of the accident and then finding intoxication to be the cause by process of elimination. In essence, Kal argues that the only evidence supporting the Commission's decision was his blood alcohol reading. Were this the case, he might have a point. Idaho Code section 18-8004(1)(a) makes it unlawful for a person who has a BAC of .08 or more to operate a motor vehicle on Idaho roads. However, just because a worker with such a BAC reading is involved in an injury accident does not necessarily mean that intoxication was a reasonable and substantial cause of the accident. Intoxication, for purposes of Idaho Code section 72-208, "means being under the influence of alcohol or of [non-prescription] controlled substances." I.C. § 72-208(3). Idaho Code section 72-208 does not contain a presumptive standard, like the DUI statute. A BAC reading is certainly relevant to the inquiry but, standing alone, is not necessarily sufficient to make the required showing. However, contrary to Kal's argument, the Commission relied on additional evidence in making its decision. If Kal's BAC was all the Commission considered, it would not have extensively discussed in its findings the testimony of the various witnesses and the weight it gave them.

Both parties' expert witnesses and Trooper Bivens testified generally as to the significant impairing effect alcohol can have on a person's judgment, motor skills, multi-tasking, alertness, reaction time, depth perception, and inhibitions. Then, they each applied their knowledge of the effects of alcohol to the facts of this case to give opinions on how alcohol affected Kal on the night of his accident and whether his consumption of alcohol was a substantial cause of his accident and injuries. In addition to testimony regarding the general effects of alcohol, Trooper Bivens testified that, "based on [his] own experience, based on dealing with other intoxicated individuals with similar intoxication levels [to Kal's], or even a little lower, there is a noticeable affect on that individual, . . . a noticeable impairment. It's obvious." He testified that at levels similar to Kal's, one's motor skills, judgment, and inhibitions would be noticeably impaired. He also testified that all the circumstances surrounding Kal's accident suggest intoxication was a cause of the accident because one who was driving 123 mph on a road he was very familiar with and approaching a curve he was very familiar with, with a .11 BAC and allegedly texting, would be exercising extremely poor judgment. Bivens opined that the judgment of a person behaving in such a way would have been affected by his or her consumption of alcohol. Bivens also testified

7

to finding bottles of beer, spilled beer, and a strong odor of alcohol in Kal's vehicle when he was investigating the scene.

Dr. Dawson opined that Kal would have been impaired in his ability to safely operate a vehicle, given his BAC at the time of the accident. Dr. Dawson's ultimate opinion, stated "to a reasonable degree of probability in [his] field [and] based upon [his] education and research on the effects of alcohol and drugs on cognitive and psychomotor functioning, as well as the documentation contained in this case," is that "intoxication was a reasonable and substantial cause of the crash and subsequent injury." Dr. Dawson acknowledged that speed was a contributing factor to the accident and that Kal's consumption of alcohol contributed to Kal's "inability to either control the vehicle or control the speed."

Dr. Anderson, Kal's own expert witness, testified to the significant impairing effects alcohol can have on a person and admitted that Kal's intoxication "played a role" in the accident. Dr. Anderson ultimately identified three possible causes of Kal's accident and ranked them in the following order, beginning with the most substantial: (1) speed, (2) texting, and (3) intoxication.[3] The majority of Dr. Anderson's testimony focused on trying to show what the primary, number-one cause of the accident was. He seemed to believe that if he showed Kal's speed was the primary cause of the accident, this would show that intoxication was not a substantial cause of the accident. Dr. Anderson's opinion letter regarding the cause of Kal's injuries states that "*the* reasonable and substantial cause of [Kal's] injuries is traveling 123 mph while attempting to negotiate a corner on a road posted at 50 mph." (emphasis added). His use of the word "the" in his opinion indicates he was under the false impression that there could be only one reasonable and substantial cause. This misunderstanding is further evidenced by Dr. Anderson stating early in his deposition that his task in this case was to determine if "alcohol [was] the single most important factor in causing the accident." Although counsel corrected Dr. Anderson that he was there to opine as to the reasonable and substantial causes of the accident, later in the same

---

[3] Interestingly, Dr. Anderson began his testimony by seemingly attempting to minimize the role intoxication played in the accident when he stated he had identified at least four or five factors that contributed to the accident and that alcohol was number five on a scale of most substantial to least substantial. Thereafter, he only discussed four causes. Additionally, there was no meaningful distinction between his numbers one and two. He said the number-one cause was Kal's ADHD, which causes him to have an addictive personality. He said the number-two cause was Kal's addictive personality, which causes him to have an addiction to speed. Essentially, Dr. Anderson opined the two most substantial causes were Kal's speed. Finally, the cause Dr. Anderson considered third most substantial (numbers one and two being speed), Kal's alleged texting, is never mentioned in Dr. Anderson's initial opinion letter discussing the causes of the accident.

deposition Anderson stated that he understood "reasonable and substantial cause" to mean "the number one cause, . . . the main cause, . . . [the] reproducible cause." Given that Dr. Anderson seemed to be on a search only for the *most* substantial cause of Kal's accident, which would do nothing to help determine whether intoxication was also **a** substantial cause, the Commission did not err in giving Dr. Anderson's opinions little weight and finding Dr. Dawson's opinions more persuasive.

Kal also argues there was not substantial and competent evidence to support the Commission's finding that on the night of the accident, Kal had an unusually reckless state of mind caused by his intoxication. The finding in question reads:

> The [Commission] finds Defendants have met their burden of proving Claimant's intoxication was a reasonable and substantial factor contributing to his accident and injuries. While perhaps not the proximate cause, alcohol was certainly a reasonable and substantial cause. Claimant testified that he generally drove safely, even when speeding. Yet on the night of the accident he admitted driving recklessly. The clearest explanation for Claimant's unusual reckless state of mind, based upon the evidence in the record, is that he was experiencing impairment due to intoxication.

There is substantial, competent evidence in the record to support these findings. Dr. Dawson testified that Kal's consumption of alcohol impaired his judgment and contributed to his excessive speed the night of the accident. Indeed, any reasonable observer who is familiar with the effects of alcohol would have no difficulty in reaching these conclusions. It would not be much of a stretch to determine that a person driving 123 mph at night, approaching a curve, with a blood alcohol level of .11%, and purportedly texting in the process, was influenced in doing so by virtue of the consumption of alcohol. It is about as close to a no-brainer as one can get. Thus, there is substantial and competent evidence in the record to support the Commission's determination that intoxication was a reasonable and substantial cause of Kal's accident and resulting injuries.

## B. Any incidental consideration by the Commission of Kal's use of prescription pain medication is inconsequential.

In its findings, the Commission referenced testimony by Dr. Dawson that "the combination of alcohol and opiates in Claimant's system at the time of the accident produced an addictive depressant effect on Claimant's central nervous system," which impaired Kal's cognitive abilities and that "alcohol, together with the presence of opiates, produced a marked impairment of his ability to operate a motor vehicle in a safe manner."

9

Kal cites to Idaho Code section 72-208(3) which specifies that "intoxication" does not include the effects of prescription medications. Kal contends that any medications he was taking at the time of the accident were prescription medications and could not be considered in determining whether he was intoxicated. He claims the Commission improperly relied on this evidence in concluding that he was intoxicated.

In response, SIF contends that consideration of Kal's use of the opiates was proper because he was not using them "in accordance with the instructions for use of the controlled substance," as required by Idaho Code section 72-208(3). More particularly, SIF contends that Dr. Dawson was correct in citing to Kal's opiate use because the instructions for the prescriptions clearly indicated that they were not to be taken together with alcohol.

Whether or not Kal's use of the opiates was properly referenced, the Commission specifically noted that "Dr. Dawson reiterated that when opiates and lithium were excluded, it was the alcohol alone that was a reasonable and substantial cause of Claimant's accident and resultant injuries." The Commission went on to specifically find that "alcohol was certainly a reasonable and substantial cause" of Kal's accident. Therefore, any reference to his use of prescription drugs, whether or not it was proper, constituted at most harmless error.

## C. The Commission did not reversibly err in failing to assign weight to the texting evidence.

Kal contends the Commission erred by refusing to consider evidence that Kal was texting at the time of the accident. With respect to the claim that Kal was texting at the time of the accident, the Commission found that

> For the first time, [Kal] alleged at hearing that he may also have been texting and was thereby distracted at the time he missed the curve. Although he has no independent recollection of texting, he bases this proposition on the fact that once he recovered his cell phone from the accident scene, it showed that he had been texting a friend at the time of the accident. As [Kal] cannot locate his cell phone, and his cell phone usage as a contributing factor in causing his accident was not raised until the hearing, any evidence regarding texting cannot be corroborated and will not be considered in this decision, even though some quoted material may reference cell phone usage.

The testimony regarding Kal's alleged texting was admitted at the hearing, without objection. It is unclear from the finding whether the referee completely ignored the evidence of texting or whether he simply found the texting evidence unpersuasive or insufficient and would therefore give it no weight in his decision. Either way, Dr. Dawson and Trooper Bivens were allowed to

10

assume the texting had occurred and to testify as to the causation of the accident in light of those assumed circumstances. Neither changed his opinion that intoxication was a substantial cause of the accident. So, even assuming Kal had been texting at the time of the accident, there is still substantial and competent evidence to find that intoxication remained a substantial cause of the accident and resulting injuries. Therefore, any error that may or may not have occurred with respect to the evidence of texting is harmless error.

**D. The Commission did not err by refusing to find Kal's failure to wear a seatbelt was a reasonable and substantial cause of the injuries.**

Kal finally argues that his injuries were caused by his failure to wear a seatbelt instead of by his intoxication. He argues that the SIF and Commission improperly focused on the cause of the accident instead of the cause of the injuries, and that, even if intoxication had caused the accident, it was the fact that he was not wearing his seatbelt that caused him such extensive injuries. This argument is unpersuasive.

Idaho Code section 72-102(18) defines "injury" and "accident." Although these terms are not synonymous, they are certainly interconnected definitionally. *Konvalinka v. Bonneville Cnty.*, 140 Idaho 477, 480, 95 P.3d 628, 631 (2004). By definition, in the workers' compensation context, "an accident must cause an injury, and an injury must be caused by an accident." *Id.* An "accident" is "an unexpected, undesigned, and unlooked for mishap, or untoward event . . . causing an injury." I.C. § 72-102(18). An "injury" is a "personal injury caused by an accident. . . ." *Id.* There are difficult cases where the existence of an "accident" is in question. *See, e.g.*, *Konvalinka*, 140 Idaho 477, 95 P.3d 628 (discussing whether repetitive motion that aggravated a pre-existing arthritic condition was an "accident"). There are also difficult cases where the existence of an "injury" is in question, perhaps because there is a question of whether the injury was caused by an accident (as required by the statutory definition), such as in the case of an aggravation of a pre-existing condition. *See Swan v. Williamson*, 74 Idaho 32, 257 P.2d 552 (1953). This is not one of the difficult cases on this issue.

In this case, there is no dispute that all of Kal's injuries resulted from the accident, and not from some pre-existing condition or other cause. Although "accident" and "injury" are not synonymous, because there is such a close and obvious connection between the accident and the resulting injuries in this particular case a showing of the cause of the accident is also a showing of the cause of the injuries that resulted from that accident. Throughout the proceedings in this case, even Kal's own counsel and his expert witness used "causation of the accident" as

11

synonymous with "causation of the injuries."

This Court will not require a showing of every possible variable that could have exacerbated or mitigated the injuries caused by the accident when it is so clear that all the injuries arose from the accident. In this case, the intoxication was a reasonable and substantial cause of the accident and the accident was the cause of Kal's injuries. It may be that his failure to wear a seatbelt caused his injuries to be greater than they might otherwise have been, but it does not change the fact that there would have been no injuries if Kal had not had the accident.

**E. Neither party is entitled to attorney fees.**

Kal argues that the SIF contested his workers' compensation claim without any evidence that intoxication was a reasonable and substantial cause of the injuries and, therefore, he is entitled to attorney fees pursuant to Idaho Code section 72-804, which provides:

> If the commission or any court before whom any proceedings are brought under this law determines that the employer or his surety contested a claim for compensation made by an injured employee . . . without reasonable ground, . . . the employer shall pay reasonable attorney fees in addition to the compensation provided by this law.

SIF had reason to believe intoxication was a reasonable and substantial cause of the accident, which would relieve SIF from liability under Idaho Code section 72-208. Therefore, SIF had reasonable grounds to contest Kal's claim, which it has successfully done. Kal is not entitled to attorney fees.

SIF argues it is entitled to attorney fees under I.A.R. 11.1. This rule currently pertains to appeals in termination and adoption cases. Given the language used in its argument and its citation of *Talbot v. Ames Constr.*, 127 Idaho 648, 904 P.2d 560 (1995), it seems SIF intended to raise the issue under I.A.R. 11.2, which was previously designated as 11.1. Therefore, we address the issue under I.A.R. 11.2, which provides in pertinent part:

> The signature of an attorney or party constitutes a certificate that the attorney or party has read the notice of appeal, petition, motion, brief or other document; that to the best of the signer's knowledge, information, and belief after reasonable inquiry it is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If the notice of appeal, petition, motion, brief, or other document is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the

12

reasonable expenses incurred because of the filing of the notice of appeal, petition, motion, brief or other document including a reasonable attorney's fee.

I.A.R. 11.2. We construe I.A.R. 11.2 in the same manner as I.R.C.P. 11(a)(1). *Flying A Ranch, Inc. v. Bd. of Cnty. Comm'rs for Fremont Cnty.*, 156 Idaho 449, 454, 328 P.3d 429, 434 (2014).

> The attorney's or party's signature on a document constitutes two substantive certifications: (a) "that to the best of the signer's knowledge, information, and belief after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law," **and** (b) "that it [the document] is not interposed for any improper purpose." Both certifications must be accurate in order to comply with the rule. If either of them is not accurate, then the document would be signed in violation of the rule.

*Id.* at 453, 328 P.3d at 433 (alterations in original).

SIF does not contend that it is entitled to attorney fees under the improper purpose provision. It argues that Kal merely asked the Court to re-weigh the evidence and enter a new conclusion favorable to him. Although Kal's arguments are notably weak, SIF has failed to identify a document that was signed by Kal or his attorney in violation of I.A.R. 11.2. Thus, we decline to award sanctions against Kal or his attorney.

## V.
## CONCLUSION

Because there is substantial and competent evidence to support the Commission's finding that intoxication was a reasonable and substantial cause of Kal's accident and resulting injuries, we affirm the Commission's order. Costs are awarded to SIF.


Chief Justice BURDICK, Justices EISMANN and HORTON and Justice Pro Tem WALTERS CONCUR.